AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Middle District of Alabama

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* ) Case No. 2:19mj74-GMB
A black Samsung Galaxy S8+, IMEI No. )
357725084546721 and is currently located at 2 North )
Jackson Street, Suite 404, Montgomery, Alabama, within )
the Bureau of ATF Montgomery Field Office.

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A.

located in the ___Middle___ District of ___Alabama___, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B..

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*
- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 USC § 922(g) | Prohibited Person in Possession of Firearm |

The application is based on these facts:

See Affidavit.

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Jeffrey Ioimo, TFO, ATF
*Printed name and title*

Sworn to before me and signed in my presence.

Date: March 11, 2018

*Judge's signature*

City and state: Montgomery, AL

Gray M. Borden, U.S. Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF:<br><br>A BLACK SAMSUNG GALAXY S8+, IMEI NO. 357725084546721 AND IS CURRENTLY LOCATED AT 2 NORTH JACKSON STREET, SUITE 404, MONTGOMERY, ALABAMA, WITHIN THE BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES, MONTGOMERY FIELD OFFICE. | Case No. _____<br><br>UNDER SEAL |

**AFFIDAVIT IN SUPPORT OF AN
APPLICATION UNDER RULE 41 FOR A
WARRANT TO SEARCH**

I, Jeffrey Ioimo, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.  I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property - an electronic device - which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2.  I am currently employed by the Montgomery, Alabama Police Department ("MPD"), and have been so employed for approximately three years. I have been deputized as a Task Force Officer ("TFO") with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), United States Department of Justice, and have been so since March 25, 2016. I am currently assigned to the Montgomery, Alabama Field Office. I have worked primarily on investigations related to firearms since March 2016. I have also investigated violations of various other federal and state offenses. As a result, I am familiar with federal criminal laws relating to firearms and illegal controlled substances.

3. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

### IDENTIFICATION OF THE DEVICE TO BE EXAMINED

4. The property to be searched is a Samsung Model Galaxy S8+ with IMEI No. 357725084546721, cellular telephone, hereinafter the "Device." The Device is currently located at 2 North Jackson Street, Suite 404, Montgomery, Alabama, within the Bureau of Alcohol, Tobacco, Firearms and Explosives Montgomery Field Office.

5. The applied-for warrant would authorize the forensic examination of the Device for the purpose of identifying electronically stored data particularly described in Attachment B.

### PROBABLE CAUSE

6. On October 14, 2017, the victim, further referred to as "SD," informed the Montgomery Police Department and Montgomery Municipal Magistrate that Cyrus Phyfier approached her at her residence, and without her consent, placed a revolver inside her vagina. Based on the alleged events, an arrest warrant was issued for Phyfier. Subsequently, the Gulf Coast Regional Fugitive Task Force ("GCRFTF") was given apprehension responsibility for Phyfier.

7. On October 18, 2017, members of the GCRFTF located Phyfier at 4132 Carmichael Road, Apt. 219, Montgomery, Alabama 36106. When Phyfier was taken into custody, he was found to have constructive possession of a Smith & Wesson model 457 and the Device. Phyfier also made an unprovoked statement, advising members of the GCRFTF to keep the firearm and the Device together as he would be getting them back.

8. On October 19, 2017, this Affiant spoke with SD who advised that she and Phyfier communicated through text messages. SD allowed this Affiant to view text messages indicating

that SD and Phyfier did communicate on October 14, 2017, via text messages and the text messages continued until October 18, 2017, shortly before Phyfier was arrested.

9. On October 20, 2017, a search warrant was conducted at 405 Southlawn Drive, Montgomery, Alabama, Phyfier's known residence, looking for the suspected firearm used during the Sexual Torture offense. During the execution of the search, MPD Officers located a plastic container with suspected marijuana. Thereafter, MPD Officers obtained a narcotics search warrant for the residence. In a bedroom containing identification documents for Phyfier, a K-Mart branded Boito/ER Amantino/IGA 20-gauge shotgun, .45 caliber ammunition and .44 caliber ammunition was located. In the dining room area of the residence on top of a piece of furniture, a digital scale was located. *[handwritten: Your Affiant knows that PHYFIER is a convicted felon and was on this date and on October 14, 2017. This prohibits him from possessing a firearm.]*

10. Your affiant believes a search of the device may disclose additional evidence that may be used in a prosecution of Phyfier related to him possessing firearms.

11. Furthermore, based off training and experience, your Affiant knows through knowledge, training, and experience that persons who possess firearms illegally commonly use cellular telephones to communicate to each other regarding several things, including, but not limited to, the price of the illegal firearms that will be purchased or sold, the locations and/or times to meet to carry out a transaction.

12. This Affiant is also aware that subjects often take photographs of firearms with their cellular phones, use their cellular phones for social media purposes where they communicate about illegal activities, such as the purchase of narcotics and firearms. In addition, cellular phones often are equipped with Global Positioning Systems (GPS) and send signal off of cellular towers, which may assist in verifying Phyfier's presence at SD's residence during the offense.

13. In your affiant's training and experience, your affiant believes that the Device was stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when the Device first came into the possession of MPD and stored by Detective Bolton at the Montgomery Police Department Criminal Investigation Division (1751 Congressman W.L. Dickinson Drive, Montgomery, Alabama). Furthermore, the Device was then taken into ATF custody by this Affiant and stored at the Bureau of Alcohol, Tobacco, Firearms and Explosives Montgomery Field Office (2 North Jackson Street, Suite 404, Montgomery, Alabama) where it was stored in the ATF vault in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when the Device first came into the possession of MPD.

## TECHNICAL TERMS

14. Based on my training and experience, I use the following technical terms to convey the following meanings:

　　a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

　　b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or

        by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

    c.    Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

    d.    GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

    e.    PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

    f.    Tablet: A tablet is a mobile computer, typically larger than a phone yet smaller than a notebook, and is primarily operated by touching the screen.

5

    Tablets function as wireless communication devices and can be used to access the Internet through cellular networks, 802.11 "wi-fi" networks, or otherwise. Tablets typically contain programs called apps, which, like programs on a personal computer, perform different functions and save data associated with those functions. Apps can, for example, permit accessing the Web, sending and receiving e-mail, and participating in Internet social networks.

 g. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

15. Based on your affiant's training, experience, and research, your affiant knows the Device has capabilities that allow it to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the Device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

16. Based on your affiant's knowledge, training, and experience, your affiant knows that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

17. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Device because:

 a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted

6

        portion of a file (such as a paragraph that has been deleted from a word processing file).

b.     Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c.     A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d.     The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e.     Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

18.    *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including, but not limited to, computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

19.    *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

20. Your affiant submits that this affidavit supports probable cause for a search warrant authorizing the seizure and examination of the Device described in Attachment A to seek the items described in Attachment B.

Respectfully submitted,

*[signature]*
Jeffrey Ioimo
Task Force Officer
Bureau of Alcohol, Tobacco, Firearms and Explosives

Subscribed and sworn to before me
on this 11th day of March, 2019.

*[signature]*
GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

The property to be searched is a black Samsung Model Galaxy S8+ with IMEI No. 357725084546721, cellular telephone, hereinafter the "Device." The Device is currently located at 2 North Jackson Street, Suite 404, Montgomery, Alabama, within the Bureau of Alcohol, Tobacco, Firearms and Explosives Montgomery, Alabama Field Office.

This warrant authorizes the forensic examination of the Device for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

1. All records and data on the Device described in Attachment A that relate to violations of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(C), Title 21, United States Code, Section 846, Title 18, United States Code, Section 2, Title 18, United States Code, Section 922(g)(1) and Title 18, United States Code, Sections 924(e), as described in the affidavit, and the identities of those involved in such violations, including:

   a. information pertaining to Phyfier's possession of firearms, firearm components, ammunition and/or ammunition components;

   b. lists of customers or sources of narcotics or firearms and related identifying information;

   c. types, amounts, and prices of drugs trafficked, as well as dates, places, and amounts of specific transactions;

   d. any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);

   e. any information recording Cyrus Phyfier's schedule or travel to the date of the seizure of the Device; and,

   f. all bank records, checks, credit card bills, account information, and other financial records.

2. Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

3. Any data or information related to the identity of the person(s) who communicated with the user of the Device about matters relating to the commission of the above-referenced crimes:

   a. Any data or information, including GPS data, GPS data establishing the user's connection to the commission of the above-referenced crimes;

   b. Photographs evidencing the planning of, or individuals involved in, the commission of the above-referenced crimes;

  c. Web searches related to the commission of the above-referenced crimes; and,

  d. The assigned number of the cellular phone, text messages, deleted text messages, recently dialed or received numbers, voice mail messages, telephone numbers, GPS information, e-mail messages (to include deleted emails), address book information (including deleted addresses/phone numbers), videos and photographs related to the above-referenced crimes.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review any information removed from the Device in order to locate the things particularly described in this Warrant.